UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: Rusty L. Packer and Kristi Jo Packer, | ) ) | Bankruptcy No. 17-81746 |
| Debtors. | ) ) ) ) ) ) ) ) ) | Chapter 12<br><br>Judge Lynch |

## SUPPLEMENTAL MEMORANDUM OPINION

On April 19, 2018, the Court gave an oral ruling denying the Debtors' amended motion for use of cash collateral (ECF No. 131, the "Cash Collateral Motion") in part without prejudice. At that time, the court indicated that it would supplement its oral ruling with a written decision to follow. This memorandum is that decision.[1]

## FACTUAL AND PROCEDURAL HISTORY

Rusty Packer and his wife Kristi Jo Packer (the "Packers") commenced their Chapter 12 bankruptcy on July 27, 2017. It is uncontested that the Debtors are the sole owners of Packer Farms, LLC and Midwest Agri-Services, LLC and that Rusty

---

[1] This ruling is limited to the Debtors' request to use certain funds held in a depository account at the time the Cash Collateral Motion was filed. In the Debtors' reply brief filed April 4, 2018 and at the trial held on April 6, 2018, the Debtors made reference to and elicited testimony regarding certain 2017 crops still stored in bins at that time and allegedly farmed by Rusty Packer individually. At the April 19, 2018 hearing the Debtors clarified that they sought permission to use the proceeds of those crops as well. The court therefore continued the remainder of the Cash Collateral Motion for the Debtors to amend their motion to address their request to use the 2017 crop proceeds. However, the Debtors and First Trust & Savings Bank subsequently reached an agreement on the use of the crop proceeds. In accordance with that agreement, the court entered an agreed order resolving the remainder of the Cash Collateral Motion on May 3, 2018. (Order Allowing Use of Cash Collateral, ECF No. 165.)

Packer is a 50% owner of Genesys Specialty Group, LLC. Although these entities have in the past been involved with the Packers' farming operations, none of the corporate entities have filed petitions for relief under the Bankruptcy Code.

The Packers filed an initial motion for use of cash collateral on August 3, 2017 in which they sought authorization to use unspecified "cash collateral" towards an estimated $47,090 in expenses related to their farming operations for the 2017 crop season. The motion gave no definition or description of the alleged "cash collateral" and described no cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents other than an alleged "$40,936.76 in uncashed checks ('Uncashed Checks') from the sale of the 2016 Crop Harvest which have listed First Trust as a co-payee." (ECF No. 14, ¶15.) First Trust & Savings Bank of Albany, Illinois ("First Trust"), a secured creditor of Packer Farms, LLC, objected to the initial motion. First Trust alleged that the uncashed checks described in the motion, as well as certain unsold harvested crops, crops still growing and expected government subsidies described as assets of the Debtors in the motion were in fact owned by non-debtor Packer Farms, LLC and not property of the Debtors' estate. (ECF No. 22.)

On September 15, 2017, the court entered an agreed first interim order on cash collateral, authorizing the Debtors to use up to $9,000 of the "cash collateral" of First Trust and of Central Bank Illinois for family living expenses and up to $6,000 for farm expenses. (Order, ECF No. 29.) The interim order specified that for purposes of the interim order, "cash collateral means (i) cash on hand as of the petition date, or received since the petition date, earned or collected from the sale of any item of

collateral of either Secured Creditor (including grain), and (i) [sic] to the extent (i) is not sufficient, cash not to exceed $5,000.00 from the deposit of checks (the 'Checks') payable to the Debtors or any entity they control earned or collected from the sale of any item of collateral of either Secured Creditor." (*Id.*) It further provided that as "adequate protection to the Secured Creditors for the use of their cash collateral, (i) the Secured Creditors are each granted replacement liens in all post-petition assets of the Debtors that are of the same character as the pre-petition assets in which the respective Secured Creditor had liens and security interests, and (ii) the Debtors shall open a new bank account, to be referred to as the Cash Collateral Account, into which all checks and crop sale proceeds shall be promptly deposited." (*Id.*) However, the interim order made clear that nothing therein "shall be deemed an adjudication, resolution, or waiver of any objection of the Secured Creditors to the Motion" or "an adjudication, resolution, or waiver of any rights or priorities as between the Secured Creditors." (*Id.*)

On March 15, 2018, the Debtors filed an amended motion for use of cash collateral. (ECF No. 131.) The amended Cash Collateral Motion describes and defines the "Cash Collateral" that the Debtors seek to use as "the un-negotiated checks and 2016 soybean proceeds totaling $93,798" which the Debtors "by agreement and consent with its secured creditors, caused Packer Farms to deposit ... into the Debtors' Cash Collateral account." (ECF No. 131, ¶9.) First Trust again objected that the purported "cash collateral" which the Debtors sought to use was not property of the Debtors' estate. The court held a trial on the motion on April 6, 2018, at which it

heard the testimony of Debtor Rusty Packer and Mark Hanson, the president and CEO of First Trust. During the trial, the Chapter 12 Trustee stated she had no position on the Cash Collateral Motion. (Tr. 91:20-22.)

Mr. Packer testified that the Debtor's "cash collateral account" contained "approximately $101,000" in funds of which approximately $48,000 was from checks for "2015 and '16" crops and approximately $68,000 "was from the sale of 2016 crops that took place during this bankruptcy." (Tr. 95:1-15.) According to Mr. Packer, the "crops that represent that $101,000 [were] farmed under Packer Farms, LLC." (Tr. 95:10-12.) He further testified that the checks totaling approximately $48,000 were made out jointly to First Trust and Packer Farms, LLC. (Tr. 96:3-6.) He testified that he had specifically requested the grain elevators to make the checks out as such. (Tr. 97:5-18.)

The Debtors' attorney argued in closing statements that "even if the [funds in the Debtor's 'cash collateral account'] were at one time Packer Farms, LLC" they became the Debtors' property as soon as they were deposited into the Debtors' account. (Tr. 171:2-13.) Counsel argued that, as owners of Packer Farms, LLC, the Debtors had the right to cause Packer Farms, LLC to make distributions to themselves. (*Id.*) But the Debtors presented no evidence to show any such distribution was in fact made. For example, they presented no evidence of the company's ledgers or any other substantiating documentation. Indeed, the parties did not even present any details about the "cash collateral account" they continually referenced, including whose name the account was in or when it was opened.

Comments made by counsel at the hearing suggest that the account is at First Trust, casting in doubt whether it may be some form of escrow account rather than an account owned by the Debtors. For example, the Debtors' counsel argued that there "has been no detriment" to First Trust because the funds are "now in First Trust Savings Bank's account ... by agreement." (Tr. 182:11-13.) The Debtors do not suggest that they may freely withdraw funds from that account. Additionally, the language proposed by the parties for the court's interim cash collateral order suggests that the parties had agreed for funds to be deposited into the account specifically reserving the right to challenge their ownership.

The Debtors have not suggested let alone demonstrated that Packer Farms, LLC has been dissolved, is an alter ego, or otherwise is not a legally separate entity from the Debtors. Nor, despite their ownership of the equity interests in the company, is it clear that the Debtors had the unfettered right to cause Packer Farms, LLC to make distributions to themselves. Mr. Packer testified that as of the date of trial, the assets of Packer Farms, LLC were less than its liabilities, and that its liabilities exceeded the value of its assets continually as of the petition date and at least as far back as January 1, 2017. (Tr. 7-17.) Together with their lack of evidence of an actual attempt to transfer funds from Packer Farms, LLC to the Debtors, the court finds that the Debtors have failed to demonstrate that the funds in the "cash collateral account" constitute property of the Debtors' bankruptcy estate.

## DISCUSSION

A debtor-in-possession may not use, sell, or lease "cash collateral" unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). "Cash collateral" is defined in the Bankruptcy Code as "cash ... deposit accounts, or other cash equivalents whenever acquired *in which the estate and an entity other than the estate have an interest.*" 11 U.S.C. §363(a). In any hearing under Section 363, the "entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p).

The parties do not dispute that one or more creditors, including First Trust, Genesys Specialty Group, LLC and Central Bank Illinois have security interests in the funds on deposit in the cash collateral account. First Trust disputes, however, that the estate has an interest in such funds. First Trust contends that the funds are owned by Packer Farms, LLC. Because the Bankruptcy Code definition of "cash collateral" requires that the estate have an interest in property, courts have denied motions for use of cash collateral where the alleged cash collateral was not property of the estate. For example, in *In re Jason Realty, L.P.*, the Third Circuit concluded that the rents at issue were "not property of the estate and are not available as cash collateral nor as a funding source for the debtor's reorganization plan" and therefore affirmed the district court's ruling reversing the bankruptcy court's order allowing use of cash collateral. 59 F.3d 423 (3rd Cir. 1995).

Notably, the Debtors seek not only relief from the restraints on use of "cash collateral" found in Section 363(c)(2) with respect to the funds held in the deposit account.[2] They go well beyond that to also request that the court grant certain post-petition 'replacement liens' in estate property to Central Bank Illinois, First Trust and Genysis Specialty Group, LLC and authorize the Debtors to make payments from estate property to those same creditors as "adequate protection" for the use of the deposit account funds. The Debtor's justification for granting the creditors such protection out of *property of the estate* is that the funds the Debtors intend to use is property of the estate and "cash collateral." As such, the Debtors are the parties seeking to include the deposit account funds in the estate, and the "party seeking to include property in the estate bears the burden of showing that the item is property of the estate." *In re TMT Procurement Corp.*, 764 F.3d 512, 523 (5th Cir. 2014) (citing *In re Klein–Swanson*, 488 B.R. 628, 633 (8th Cir. BAP 2013)) (vacating orders of the bankruptcy and district court which had ordered certain property to be deposited with the clerk of court in *custodia legis* as collateral for a DIP financing arrangement, finding that because the property was not property of the estate the courts had no subject matter jurisdiction to issue the orders).[3]

---

[2] To the extent the Debtors desire a determination that the deposit account funds are not property of the estate and therefore not subject to the restraining provisions in Section 363 – a conclusion opposite to the allegations they make in their motion – such determination would require an adversary proceeding. *See* Fed. R. Bankr. P. 7001(2), (9). The court makes no determination at this time whether or not the funds in the deposit account are in fact property of the estate. Instead, the court merely finds that the Debtors have failed to meet their burden of demonstrating that the funds constitute "cash collateral" as such term is used in the Bankruptcy Code.

[3] The Seventh Circuit has also suggested that the party seeking a determination that property is part of the estate bears the burden on that issue. In the context of a Chapter 7 trustee's motion to compel a debtor to turn over estate property pursuant to Section 542, the Seventh Circuit held that the "trustee must bring the action to claim property for the bankruptcy estate, and she bears the burden

The Debtors failed to meet their burden of proof to demonstrate that the funds in the so-called "cash collateral account" constitute property of their estate or "cash collateral" for purposes of Section 363. Accordingly, the Debtors' request for an order authorizing the use of such funds or granting or requiring "adequate protection" for such use is DENIED without prejudice.

DATE: July 19, 2018           ENTER:

                              Thomas M. Lynch
                              United States Bankruptcy Judge

---

of establishing a prima facie case for turnover. Once a prima facie case is established, the debtor must provide a reason for going forward with the case, but the ultimate burden of persuasion remains with the trustee at all times." *In re Meyers*, 616 F.3d 626, 629 (7th Cir. 2010) (citing *Gorenz v. Ill. Dep't of Agric.*, 653 F.2d 1179, 1184 (7th Cir. 1981) (citing *Maggio v. Zeitz*, 333 U.S. 56 (1948))).